UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Vanessa Lopez,

      Plaintiff,

v.

St. Paul Public Schools,

      Defendant.

Civ. No. 10-148 (RHK/JJK)
**MEMORANDUM OPINION AND ORDER**

Mark A. Greenman, Law Office of Mark A. Greenman, Minneapolis, Minnesota, for Plaintiff.

James R. Andreen, Erstad & Riemer, P.A., Minneapolis, Minnesota, for Defendant.

## INTRODUCTION

Plaintiff Vanessa Lopez alleges in this action that her former employer, the St. Paul Public Schools (the "School District"), terminated her employment in violation of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.* The School District now moves for summary judgment. For the reasons set forth below, the Court will grant the Motion.

## BACKGROUND

The material facts are undisputed. Beginning in 1991, Lopez worked for the School District as a clerk in several different departments; her final assignment was to the Community Education Department. Her immediate supervisor at the time of her

termination (November 12, 2008) was Debi Campobasso, the Community Education Coordinator.

Lopez's work performance was, to put it charitably, less than stellar. Her personnel file is replete with complaints, reprimands, and negative reviews, stemming from rudeness and inappropriate conduct in the office, repeatedly showing up late for work, an inability to accept constructive criticism, poor communication skills, and insubordination.[1] Her personnel file also reveals that, from early in her tenure with the School District, her supervisors were particularly troubled with her tardiness and absenteeism. Her 1994 performance review noted a "concern" that she was "late to work on an occasional basis." (Andreen Aff. Ex. 1.) She was investigated (and subsequently reprimanded) in April 2001 for changing her work schedule without giving appropriate notification in advance. (Id. Ex. 6.) Just two months later, she was investigated and suspended for two days after indicating on her timesheets, on two separate occasions, that she had worked a full day when she had not. (Id. Exs. 7, 9-10.) Both her 2001 and her

---

[1] Merely by way of example, a complaint was lodged against Lopez in 1998 for being "very rude" to, and arguing with, a customer on the telephone. Her supervisor issued a "formal expression of . . . concern" in 2001 because Lopez had been "belittling of [the] personal abilities" of her co-workers. Her performance evaluation later that year rated her work as "unsatisfactory" in fifteen categories, including communication skills, attitude, and judgment, and further noted that she "continuously makes her team's and supervisors['] work more difficult with negative and inappropriate comments. Does not take suggestions or follow them very well." Her 2002 evaluation rated her unsatisfactory in the same areas and pointed out that she had "ongoing problems with negative impact on [the] workplace environment." She was issued a written reprimand in January 2004 for inappropriate statements to staff members and "rude treatment to a program participant." Her 2007 evaluation indicated that she was performing "below standard" in several categories and did not "take coaching or direction well and seems to have an elevated perception of her skills compared to [her] supervisors' assessment." (See generally Andreen Aff. Exs. 1-20.)

2002 performance reviews noted problems with her arriving at work "in a timely manner." (Id. Ex. 8; accord id. Ex. 13.)

Despite these criticisms, reprimands, and warnings, Lopez's tardiness remained an issue. In February 2005, she was warned about being late to work and threatened with docked pay for continued tardiness. (Id. Ex. 18.) A February 21, 2007, reprimand noted that Lopez had been late to work *fifteen times* between January 8, 2007, and February 9, 2007, and her 2007 performance evaluation noted that "tardiness is a continuing issue." (Id. Exs. 19-20.) Lopez offered many varied explanations for her dilatoriness, including traffic congestion, road construction, and dealing with her ill mother; at other times, she simply denied being late. (Campobasso Aff. ¶ 5.)

As a result of the continued tardiness, on July 1, 2008, Campobasso held an "investigative" meeting with Eileen Caldwell from the School District's Human Resources department, Betty Anderson, a representative from Lopez's union, and Lopez. (Lopez Dep. Tr. at 31-32; Andreen Aff. Ex 22.) The purpose of the meeting was to discuss Campobasso's expectations for Lopez, including *inter alia* her working hours and her arrival time. According to her notes from this meeting, Campobasso informed Lopez that she had arrived late to work on 12 separate occasions between May 1 and May 27, 2008. (Id. Ex. 22.)[2] Lopez explained that she was taking care of her sick mother, which

---

[2] In her deposition, Lopez initially denied that tardiness was discussed at the July 1, 2008 meeting. (Lopez Dep. Tr. at 32-33.) Later, however, she acknowledged that the issue came up and that Campobasso and Caldwell had suggested alternative arrangements to help her arrive at work in a timely fashion. (Id. at 40-41.)

- 3 -

was the cause of her tardiness. (Id.)³ In a follow-up memorandum issued the day after the meeting, Campobasso informed Lopez that she was "expected to arrive and be ready to work at the start of your shift at 9:00 am," and that "[a]ny changes to this schedule will need written approval by me in advance." (Id. Ex. 23.)

By letter dated August 11, 2008, the School District informed Lopez that she had been recommended for a three-day suspension due to (1) tardiness between May 1 and May 27, 2008, as described in the July 1, 2008, investigative meeting, and (2) rude, offensive, and disrespectful behavior. (Id. Ex. 27.) The letter advised Lopez that she could respond to the allegations before a final decision would be made. (Id.) She availed herself of that opportunity and filed a written response, explaining that she had "an ill parent living with" her and that she "sometimes . . . ha[d] to make adjustments with [her] schedule at the last minute." (Greenman Decl. Ex. 2.) She further stated that she called in "on numerous occasions" to advise staff members when she was going to be late, which she believed was sufficient under the circumstances. The School District ultimately rejected these explanations and suspended Lopez for three days, informing her that her conduct "must not occur again" and directing her "to follow your established work hours and work schedule." (Id. Ex. 6.) She was warned that any additional violations could result in "more serious disciplinary action . . . up to and including possible discharge." (Id.)

---

³ The notes of the meeting indicate "[n]ot approved for primary care by FMLA" (Andreen Aff. Ex. 22), but it is unclear who raised the FMLA or in what context.

Meanwhile, although the precise date is unclear from the record, sometime after "being threatened with discipline for being late to work due to taking care of her mother," Lopez "decided to invoke [her] rights under the FMLA." (Lopez Decl. ¶ 4.) She first informed Campobasso that she thought her tardiness should be covered by the FMLA, to which Campobasso (ostensibly) replied that she "was not familiar" with the statute. (Id.) Then, on August 21, 2008, Lopez obtained the necessary forms from the School District to obtain intermittent FMLA leave to care for her mother as needed. (Greenman Decl. Ex. 3.) She submitted the forms, along with a certification of her mother's medical problems, on August 29, 2008. (Id. Ex. 4.)

Lopez's tardiness continued in September 2008, allegedly because of her mother's medical condition. On September 29, 2008, Campobasso met with her and instructed her to report to Campobasso when she arrived, so that they could jointly record Lopez's arrival time on a sign-in sheet. (Campobasso Aff. ¶ 6.) When Lopez failed to utilize this procedure on the very next day, Campobasso e-mailed her:

> Yesterday morning we discussed a couple of priority tasks, along with a new sign in procedure for documenting your daily arrival. In this discussion I gave you a sign in form and directions to keep the form and bring it into my office for initialing every morning upon arrival. As of this time today, you have not followed this procedure. Perhaps you didn't understand. If you have a concern[] with this procedure or would like further clarification we can meet again to discuss this further. Otherwise, I expect you to follow this procedure in an attempt to assist you with your efforts to arrive on time for work.
>
> In addition, I would like to meet with you in my office each day upon your arrival at 9:00 a.m. and 3:45 p.m. before you depart. These meetings are for us to discuss priorities for the day and check-in on their progress toward completion.

(Id. Ex. A.) Lopez's behavior did not change after this e-mail, however. Accordingly, Campobasso met with her and Kristin Keller, the Community Programs Manager, on October 8, 2008, and reiterated that she was to utilize the sign-in sheet when she arrived at work, as well as meet with Campobasso twice daily. (Id. ¶ 7.) Yet, Lopez's failure to comply with these directives continued.[4]

On October 20, 2008, Campobasso issued Lopez a written reprimand for her repeated failure to follow the new sign-in policy and attend the twice-daily meetings. (Andreen Aff. Ex. 28.) She noted that Lopez's conduct "constitutes insubordination and . . . is unacceptable" and warned Lopez that if she "continue[d] to choose not to follow these directives, more serious disciplinary action may be taken, including possible suspension or discharge." (Id.) Ultimately, however, Lopez utilized the sign-in sheet as instructed only once and did not attend any of the required daily meetings. (Campobasso Aff. ¶ 9 & Exs. B-C.)

In the meantime, the School District's Human Resources department contacted Lopez and informed her that she had failed to obtain Campobasso's signature on her FMLA forms. (Lopez Dep. Tr. at 78-80.) The forms were returned to her, and she tendered them to Campobasso, who signed them on October 29, 2008. (Id.; Andreen Aff. Ex. 30.) On November 5, 2008, the School District informed Lopez that she had been

---

[4] Lopez's counsel asserted at oral argument that Lopez disputes that she failed to check in with Campobasso or attend the daily meetings. Yet, counsel conceded that Lopez nowhere mentioned this in her Declaration, and the Court has located no other evidence in the record to support that assertion. Insofar as arguments of counsel are not evidence that may be considered at summary judgment, see, e.g., Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 526 (2d Cir. 1994), the Court considers this fact undisputed.

approved for "intermittent family medical leave of absence . . . during the 2008/2009 school year to care for your parent's illness." (Id. Ex. 30.)

Unbeknownst to Lopez, however, on November 3, 2008, Campobasso had recommended her termination to the Director of Community Education. (Campobasso Aff. ¶ 10 & Ex. C.) In that recommendation, Campobasso explained:

> As I have continued to monitor the tardiness issue, I directed [Lopez] on several occasions to call my voicemail when I am not in the office to time stamp her arrival. The recent occasions include (but are not limited to) September 24 & 25, 2008 and October 16 and 17, 2008. After failing to follow this procedure I adjusted the procedure to include a daily sign-in sheet as well as daily work meetings at 9:00 a.m. and 3:45 [p].m. to improve communication. After several reminders, a meeting with Kristin Keller on October 8, [and] a meeting with her Union Representatives on October 22, 2008, [Lopez] has chosen to not comply with this directive on any of the dates from September 30-October 29, 2008. In an investigative meeting which was held on October 29, 2008 at 1:30 p.m.[,] after arriving 15 minutes late [Lopez] said she did not have a copy of the sign-in sheet and the meetings are a "wa[ste] of time."
>
> This conduct violates District policy and is a continuation of prior problems and is unacceptable for an employee of the Saint Paul Public Schools. In spite of our efforts to assist [Lopez] by identifying problems, helping her to correct them, and warning her of consequences for further problems, the unacceptable conduct has continued. Consequently, I believe that a termination of employment is appropriate.

(Id. Ex. C.) Lopez was terminated on November 12, 2008. (Andreen Aff. Ex. 29.) Her termination letter provided two reasons for her termination: (1) "chronic failure to observe work hours," including nine days in September and October 2008 on which Lopez claims she was late because she was caring for her mother (Lopez Decl. ¶ 7); and (2) "fail[ure] to follow directives on multiple occasions," including "not attend[ing] any 9:00 AM and 3:45 PM daily meetings as directed on September 30, 2008, and again on

October 08, 2008," and "not complet[ing] the required sign-in sheet."  (Andreen Aff. Ex. 29.)

Some fourteen months later, Lopez commenced the instant action against the School District, alleging that her termination violated the FMLA because it took "into account absences that were protected by" the statute.  (Compl. ¶ 19.)  With discovery now complete, the School District moves for summary judgment.

## STANDARD OF DECISION

Summary judgment is proper if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The moving party bears the burden of showing that the material facts in the case are undisputed.  Id. at 322; Mems v. City of St. Paul, Dep't of Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000).  The Court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party.  Graves v. Ark. Dep't of Fin. & Admin., 229 F.3d 721, 723 (8th Cir. 2000); Calvit v. Minneapolis Pub. Schs., 122 F.3d 1112, 1116 (8th Cir. 1997).  The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik v. Cnty. of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

## ANALYSIS

### I. The FMLA generally

The FMLA was enacted to "provide[] job security to employees who must miss work because of their own illnesses, to care for family members, or to care for new babies." Stallings v. Hussmann Corp., 447 F.3d 1041, 1050 (8th Cir. 2006); accord 29 U.S.C. § 2612(a)(1)-(5). It allows an eligible employee to take up to 12 weeks of unpaid leave during a 12-month period for such reasons. 29 U.S.C. § 2612(a)(1).

Aggrieved employees may bring two types of claims under the FMLA: "interference" claims and "retaliation" claims. E.g., Phillips v. Mathews, 547 F.3d 905, 909 (8th Cir. 2008). An "interference" claim arises if an employer has "denied or interfered with" the employee's substantive rights under the statute. Id. A "retaliation" claim arises if an employer has "discriminated against" the employee for exercising her FMLA rights. Id.[5] The difference between the two types of claims is that an "interference claim merely requires proof that the employer denied the employee his entitlements under the FMLA, while [a] retaliation claim requires proof of retaliatory intent." Stallings, 447 F.3d at 1051.

A hazy line separates interference claims from retaliation claims. See id. ("Although in some circumstances, a given set of facts will fall clearly into either [category], it appears that the lines between the two . . . are not hard and fast.") (citation

---

[5] Interference claims and retaliation claims sometimes are referred to as "(a)(1)" and "(a)(2)" claims, respectively, in recognition of the sections of the FMLA authorizing such claims (29 U.S.C. § 2615(a)(1) and (a)(2)). See, e.g., Phillips, 547 F.3d at 905.

omitted). Here, the precise nature of Lopez's FMLA claim is unclear from the Complaint. In her Motion papers, however, Lopez has clarified that she is bringing only an interference claim. (See Mem. in Opp'n at 9 ("In this case, Lopez makes a Section 2615(a)(1) interference claim.").) The Court follows her lead and will analyze her claim as asserting only FMLA interference under 29 U.S.C. § 2615(a)(1).

## II. The FMLA applied here

Lopez's FMLA claim is predicated on the School District penalizing her for tardiness resulting from caring for her ill mother – in other words, tardiness protected under the FMLA. (See Mem. in Opp'n at 9.) The School District proffers several arguments why this claim fails (see Def. Mem. at 17-26), but the Court focuses on only one, which is dispositive: Lopez would have been fired regardless of exercising her FMLA rights. (See id. at 24-25.)

As Lopez acknowledges, a plaintiff asserting an FMLA interference claim must establish that (1) she was an eligible employee, (2) the defendant was her employer, (3) she was entitled to leave under the FMLA, (4) she gave the defendant notice of her intent to take such leave, and (5) the defendant denied her an FMLA benefit (or benefits) to which she was entitled. E.g., Brehmer v. Xcel Energy, Inc., Civ. No. 06-3294, 2008 WL 3166265, at *6 (D. Minn. Aug. 4, 2008) (Ericksen, J.) (citation omitted). Establishing each of these five elements, however, does not automatically mean that a plaintiff is entitled to recover. Because the FMLA "is not a strict-liability statute," Estrada v. Cypress Semiconductor (Minn.) Inc., 616 F.3d 866, 871 (8th Cir. 2010), the defendant "will not be liable if [it] can prove it would have made the same decision had

the employee not exercised [her] FMLA rights." Bacon v. Hennepin Cnty. Med. Ctr., 550 F.3d 711, 715 (8th Cir. 2008) (citation omitted). Simply put, the FMLA does not insulate an otherwise deficient employee from termination. See, e.g., Estrada, 616 F.3d at 871 ("An employee who requests FMLA leave has no greater protection against termination for reasons unrelated to the FMLA than she did before taking the leave.").

This principle proves fatal to Lopez's claim. As the School District notes, there is no dispute that Lopez was terminated for several different reasons, including her failure to follow Campobasso's directive to utilize the sign-in sheet and attend daily meetings. (See Def. Mem. at 25-26 (citing Andreen Aff. Ex. 29).) Indeed, this was the "*main reason*" Campobasso wanted Lopez fired (Campobasso Aff. ¶ 10 (emphasis added)), and her memorandum recommending Lopez's termination makes only passing reference to tardiness, focusing instead on her "insubordination" by failing to sign in and attend meetings as instructed. (Id. Ex. C.) There is also no dispute that each of the reasons given for Lopez's discharge (as cited in the termination letter) was independently sufficient to justify her termination. (See Andreen Aff. Ex. 29.) Hence, even if Lopez were correct that the School District penalized her for tardiness on days she was caring for her mother, her claim would still fail. The School District has demonstrated that it would have fired her regardless of such tardiness.[6]

---

[6] Lopez relies upon Wysong v. Dow Chemical Co., 503 F.3d 441, 447 (6th Cir. 2007), for the proposition that an adverse employment action based *even in part* on FMLA-protected conduct is actionable as interference. (Mem. in Opp'n at 17.) It is unclear whether Wysong remains good law on this issue, however. See Mitchell v. Cnty. of Wayne, 337 F. App'x 526, 532 (6th Cir. 2009) (noting that an employer can avoid liability by showing it would have "made the same decision had the employee not exercised [her] FMLA rights") (quoting Throneberry v. McGehee

In the overall context of Lopez's employment, this conclusion makes eminent sense. While it may be true that tardiness was one factor considered by the School District when it fired her, there is no dispute that she had a long and documented history of poor performance and insubordination, and both the intensity and frequency of her insubordination increased throughout 2008. It appears that Lopez's supervisors simply concluded that enough was enough – not just with respect to her constantly arriving late, but also with respect to her disobeying commands and belittling Campobasso's instructions (*e.g.*, calling the daily meetings a "waste of time"). Moreover, it would be anomalous indeed to conclude that Lopez's FMLA request somehow factored into the termination decision when the School District (and Campobasso, who recommended the termination) *approved* that request. At bottom, regardless of whether the School District considered Lopez's tardiness in its termination decision, her failure to adhere to the check-in requirement was a separate and distinct reason for her termination, unrelated to the FMLA.[7]

---

Desha Cnty. Hosp., 403 F.3d 972, 977 (8th Cir. 2005)). Regardless, to the extent Wysong purports to create strict liability – that is, to the extent it can be read to bar employers from asserting a "same decision" defense – the Court declines to follow it, in light of the Eighth Circuit cases set forth above. At oral argument, Lopez's counsel asserted (for the first time) that the Eighth Circuit also follows the "in whole or in part" rule adopted in Wysong. No authority was proffered for that proposition, however, and the Court has not located any. This is not surprising – such authority would be inconsistent with the many Eighth Circuit cases holding that an FMLA defendant may avoid liability by showing it would have taken the same action regardless of the employee's protected status or conduct.

[7] It is worth noting that the FMLA does not prevent an employer from requiring an employee to adhere to certain "check in" requirements, even while on FMLA leave, see, e.g., Thompson v. CenturyTel of Cent. Ark., LLC, No. 09-3602, 2010 WL 4907161, at *4 (8th Cir. Dec. 3, 2010) (*per curiam*) ("[A]n employer may terminate an employee on FMLA leave if she fails to comply

Notably, Lopez's opposition brief nowhere addresses (or even acknowledges) the School District's argument that she would have been fired regardless of her request for FMLA leave. While this failure, standing alone, is a sufficient reason to grant the pending Motion, see, e.g., Phillips v. Speedway SuperAmerica LLC, Civ. No. 09-2447, 2010 WL 4323069, at *4 (D. Minn. Oct. 22, 2010) (Kyle, J.), more importantly it is a tacit concession of the School District's point.

The Court need not proceed any further. Where, as here, "an employer can show a lawful reason [for its actions], *i.e.*, a reason unrelated to an employee's exercise of FMLA rights," no interference claim may lie. Throneberry v. McGehee Desha Cnty. Hosp., 403 F.3d 972, 979 (8th Cir. 2005). There is no genuine issue that the School District had a lawful reason, unrelated to the FMLA, for terminating Lopez's employment. Accordingly, the School District's Motion for Summary Judgment must be granted.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Defendant's Motion for Summary Judgment (Doc. No. 9) is **GRANTED**, and Plaintiff's Complaint (Doc. No. 1) is **DISMISSED WITH PREJUDICE.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: January 4, 2011               s/Richard H. Kyle
                                    RICHARD H. KYLE
                                    United States District Judge

---

with the employer's call-in requirement."); Bacon, 550 F.3d at 715, and Lopez does not argue to the contrary.